UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY MARLAN HAYNES,

      Petitioner,

                                           CASE NO. 2:07-CV-14522
v.                                          JUDGE GEORGE CARAM STEEH
                                           MAGISTRATE JUDGE PAUL J. KOMIVES

GERALD HOFBAUER,

      Respondent.[1]
_____/

**REPORT AND RECOMMENDATION**

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

    1.    Petitioner Randy Marlan Haynes is a state prisoner, currently confined at the Marquette Branch Prison in Marquette, Michigan.

    2.    On January 31, 2005, following a plea hearing in the Kent County Circuit Court, petitioner was convicted of armed robbery and fourth habitual offender, MICH. COMP. LAWS § 750.529. On March 30, 2005, he was sentenced to a term of 18-40 years' imprisonment.

    3.    On February 2, 2006, petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.    MUST A CORRECTED PRESENTENCE REPORT BE SENT TO

---

[1] By Order entered this date, Gerald Hofbauer has been substituted in place of Thomas Birkett as the proper respondent in this action.

>    THE DEPARTMENT OF CORRECTIONS WHICH REFLECTS THE CHANGES THE TRIAL COURT ORDERED AT SENTENCING?
>
> II. DID THE TRIAL COURT ABUSE ITS DISCRETION IN NOT STRIKING OBJECTED TO INFORMATION FROM THE PRESENTENCE REPORT?
>
> III. IS DEFENDANT ENTITLED TO CREDIT FOR TIME SERVED IN JAIL AWAITING SENTENCING IN THIS MATTER?

While his appeal was pending, petitioner filed a motion *pro se* to withdraw his plea in Kent County Circuit Court. Petitioner raised two claims: (1) the prosecutor had failed to fulfill his plea agreement; and (2) ineffective assistance of counsel. The trial court denied the motion to withdraw the plea on March 21, 2006. *See People v. Haynes*, No. 04-02654-FC (Kent County, Mich., Cir. Ct. Mar. 21, 2006). The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Haynes*, No. 268710 (Mich. Ct. App. Apr.18, 2006).

> 4. On May 1, 2006, petitioner filed a motion of reconsideration with the Michigan Court

of Appeals. Petitioner presented the following two issues:

> I. APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TRIAL BY JURY WHEN THE TRIAL COURT DENIED APPELLANT'S MOTION TO WITHDRAW HIS PLEA AFTER THE PROSECUTION BREACHED A PLEA AGREEMENT.
>
> II. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE WHERE HE INDUCED AND ALLOWED APPELLANT TO PLEAD TO A CHARGE THAT WAS NOT A PART OF THE PLEA AGREEMENT, THEREBY DENYING APPELLANT HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW.

These are essentially the same two issues that were raised in his motion to withdraw the plea filed in the trial court. The court of appeals denied the motion for reconsideration. *See People v. Haynes*,

No. 268710 (Mich. Ct. App. March 24, 2006).

   5.  On June 20, 2006, petitioner applied for leave to appeal in the Michigan Supreme Court. He presented the same two issues that were raised in his motion to withdraw the plea in the trial court and in his motion for reconsideration in the Michigan Court of Appeals. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Haynes*, 477 Mich. 912, 722 N.W.2d 810 (2006).

   6.  On October 23, 2007, petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus. As grounds for the writ of habeas corpus, he raises the two issues that were raised in the motion to withdraw the plea, motion for reconsideration in the court of appeals, and application for leave to appeal to the Michigan Supreme Court.

   7.  On April 24, 2008, respondent filed his answer. Respondent contends that petitioner's claims are unexhausted and that at the time the plea was entered, petitioner was fully aware of the current plea agreement and chose to plead no contest to the counts of armed robbery and fourth habitual offender.

   8.  On May 19, 2008, petitioner filed a reply to respondent's answer.

B. *Factual Background Underlying Petitioner's Conviction*

   Petitioner was initially charged with armed robbery, possession of cocaine less than 25 grams, second drug offender, and fourth degree habitual offender. On the date of the preliminary examination petitioner agreed to waive the examination in order to keep the plea offer open. Waiver of Prelim. Exam. Tr., at 3. The plea offer consisted of petitioner agreeing to plead guilty to armed robbery in exchange for the other three charges being dismissed. *See id.* Petitioner agreed to waive his preliminary exam. *See id.* at 4.

At the subsequent plea hearing, petitioner was informed of the two charges to which he would plead no contest, armed robbery and fourth habitual offender. *See* No Contest Plea Tr., at 3. Petitioner was informed by the court of the maximum sentencing period for the two charges. *See id*. at 5. Petitioner was asked if he understood the maximum sentencing period and stated that he did. *See id*. He was then told all the rights he was giving up by pleading no contest. *See id*. at 5-7. Petitioner did not object to forfeiting his rights. *Id*. Petitioner was informed of the plea agreement that was being made and was asked if he was ever led to believe anything different than what had been stated. *See id*. at 7,10-11. Petitioner indicated that he understood the agreement and he agreed that no one had promised him any benefit other than those provided by the plea agreement or that anyone had threatened or coerced him to plead no contest. *See id*. at 11. The court then accepted petitioner's plea. *See id.*

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

5

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.   *Analysis*

Petitioner contends that the prosecution breached its plea agreement with him because it was agreed at the time he waived his preliminary examination that he would plead guilty solely to the armed robbery charge and that the remaining charges, including the habitual offender charge, would be dismissed.  He also contends that counsel was ineffective for allowing him to plead guilty to being an habitual offender.  The Court should conclude that petitioner is not entitled to habeas relief

on these claims.[2]

    1.    *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id.* at 508 (footnotes omitted).

---

[2] Respondent contends that petitioner's claims are unexhausted because they were not presented to the Michigan Court of Appeals. Petitioner's claims were, in fact, presented to the court of appeals, albeit solely in a motion for reconsideration. The Court need not determine whether this form of presentation was sufficient to exhaust the claims, however, because "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Because, as explained below, petitioner's claims are clearly meritless, the Court should deny the claims on that basis rather than requiring further exhaustion.

In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. The Court has subsequently clarified this language, holding that *Santobello* does not apply to every rescinded government promise. Rather, it applies only to those promises that induce a defendant to plead guilty. *See Mabry v. Johnson*, 467 U.S. 504, 507-08, 510 (1984). Under *Santobello*, the appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea. *See Santobello*, 404 U.S. at 263. The appropriate remedy is within the trial court's discretion, *see Santobello*, 404 U.S. at 263; *United States v. Bradstreet*, 207 F.3d 76, 80 (1st Cir. 2000); *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994), and the Constitution does not require specific performance, *see Mabry*, 467 U.S. at 510 n.11; *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1300 (4th Cir. 1992).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

8

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him. As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.

> A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

    2.    *Analysis*

Petitioner does not contend that he was coerced into pleading guilty or that the decision was not his own, nor could he given that he stated at the plea hearing that he had not been threatened or coerced into pleading guilty. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Likewise, petitioner does not contend, nor could he, that he did not receive sufficient explanation of various things required to make his voluntary. The Supreme Court cases discussing the validity of guilty pleas under the Due Process Clause establish three things of which a defendant must be informed before a guilty plea is knowing and voluntary: (1) the actual charge against the defendant, *see Bousley v. United States*, 523 U.S. 614, 618 (1998); (2) the direct consequences of the plea, *see Mabry*, 467 U.S. at 509; and (3) the rights that the defendant is waiving by pleading guilty, *see Henderson*, 426 U.S. at 645 n.13. As discussed in part B of this Report, *supra*, the plea hearing transcript establishes that petitioner was informed of each of these

things. Nor, in making his *Santobello* claim, does petitioner argue that the sentence imposed did not comport with the sentencing agreement reached by the parties.

Rather, petitioner contends that the actual agreement was that he would plead guilty to the armed robbery charge and the remaining charges, including the habitual offender charge, would be dismissed. This claim is based on the offer that had been made by the prosecutor at the time scheduled for the preliminary examination in the district court. However, petitioner did not at that time accept the plea, and by the time he did reach agreement with the prosecutor 10 months had elapsed, the case was in the circuit court, and the prosecutor had attained greater knowledge of petitioner's criminal history. For this reason, by the time of the actual plea, the prosecutor was no longer offering to dismiss the habitual offender charge. The dismissal of the habitual offender charge was not part of the inducement for petitioner's plea, because at the plea hearing it was made clear that the petitioner was agreeing to plead guilty to that charge as well as the armed robbery charge, and petitioner indicated that he understood the terms of the plea agreement.

Because petitioner well understood the terms of the plea agreement actually reached between the parties, which included a plea to the habitual offender charge, petitioner's argument essentially rests on an assertion that the prosecutor was obligated to keep open its original offer that petitioner could plead guilty solely to the armed robbery charge. Contrary to petitioner's argument, however, "[t]here is no duty by a prosecutor to keep a plea bargain open for any length of time." *Stokes v. Armontrout*, 851 F.2d 1085, 1090 (8th Cir. 1988). Thus, "a plea agreement that has not been entered and accepted by the trial court does not bind the parties." *United States v. Kuchinski*, 469 F.3d 853, 858 (9th Cir. 2006) (internal quotation omitted). As the Fifth Circuit has explained:

> [T]he realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely

11

> neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court.

*United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir. 1980). Thus, in the absence of detrimental reliance on the offer by the defendant, the prosecutor is free to withdraw an offer, even after acceptance by the defendant, until the plea is actually entered and accepted by the trial court. *See Kuchinski*, 469 F.3d at 858; *United States v. Papaleo*, 853 F.2d 16, 19-20 (1st Cir. 1988); *Government of the V.I. v. Scotland*, 614 F.2d 360, 365 (3d Cir. 1980). Here, petitioner has presented no detrimental reliance on the initial plea offer. While he waived his preliminary examination, he did so not on the basis of any agreement that had actually been reached, but so that he would have time to consider the offer. His desire to consider the offer does not amount to reliance induced by the government's offer which affected his rights in any way.

To highlight the matter, petitioner's exact claim was rejected by the Supreme Court in *Mabry*, *supra*. In that case, the Court explained that "[a] plea bargain standing alone is without constitutional significance; it itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution." *Mabry*, 467 U.S. at 507 (footnote omitted). Relying on this reasoning, the Court distinguished *Santobello* in rejecting the defendant's claim that his subsequent plea was involuntary because it was entered only after the prosecutor had withdrawn a previous, more beneficial agreement:

> *Santobello* demonstrates why respondent may not successfully attack his plea of guilty. Respondent's plea was in no sense induced by the prosecutor's withdrawn

> offer; unlike *Santobello*, who pleaded guilty thinking he had bargained for a specific prosecutorial sentencing recommendation which was not ultimately made, at the time respondent pleaded guilty he knew the prosecution would recommend a 21-year consecutive sentence. Respondent does not challenge the District Court's finding that he pleaded guilty with the advice of competent counsel and with full awareness of the consequences-he knew that the prosecutor would recommend and that the judge could impose the sentence now under attack. Respondent's plea was thus in no sense the product of governmental deception; it rested on no "unfulfilled promise" and fully satisfied the test for voluntariness and intelligence.
>
> Thus, because it did not impair the voluntariness or intelligence of his guilty plea, respondent's inability to enforce the prosecutor's offer is without constitutional significance. Neither is the question whether the prosecutor was negligent or otherwise culpable in first making and then withdrawing his offer relevant. The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty. Here respondent was not deprived of his liberty in any fundamentally unfair way. Respondent was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now.

*Mabry*, 467 U.S. at 510-11 (footnotes omitted). And, as the Court further explained, "*Santobello* expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea; the Court made clear that permitting Santobello to replead was within the range of constitutionally appropriate remedies." *Id*. at 510 n.11. Thus, "[i]t follows that [defendant's] constitutional rights could not have been violated. Because he pleaded after the prosecution had breached its 'promise' to him, he was in no worse position than Santobello would have been had he been permitted to replead." *Id*.

Here, as in *Mabry*, petitioner did not plead guilty thinking he had bargained for a dismissal of the habitual offender charge. It was made clear to petitioner, and he acknowledged, that he was pleading guilty to that charge. There was no unfulfilled promise which induced the plea, and thus petitioner's "inability to enforce the prosecutor's [initial] offer is without constitutional significance." *Id*. at 510. Further, as in *Mabry*, petitioner pleaded guilty after the prosecutor's alleged "breach" of the initial offer, and thus he received all the remedy that he would be entitled

13

to under *Santobello*. *See Mabry*, 467 U.S. at 510 n.11. For these reasons, petitioner cannot show that the plea he actually entered was involuntary, or that the government breached the actual agreement reached under *Santobello*. And, because the prosecutor was not obligated to keep open its initial offer, petitioner cannot show that counsel was ineffective for allowing him to plead guilty to the habitual offender charge or for failing to demand specific performance of the prosecutor's original offer. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his claims.

E.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR

72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: 11/3/09

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on November 3, 2009.
>
> s/Eddrey Butts
> Case Manager